***********
Upon review of all of the competent evidence of record with references to the errors assigned and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, the Full Commission modifies and AFFIRMS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Defendant-employer was insured for workers' compensation purposes by Cincinnati Insurance Co., Inc. at all relevant times herein.
4. Plaintiff average weekly wage is $550.00.
5. The following exhibits were entered into the evidence of record at the hearing before the Deputy Commissioner:
Stipulated Exhibit 1 plaintiff's medical records
Plaintiff's Exhibit 1 plaintiff's time card
Plaintiff's Exhibit 2 plaintiff's claim file
Plaintiff's Exhibit 3 articles of incorporation
Plaintiff's Exhibit 4 medical document, dog
Plaintiff's Exhibit 1 plaintiff's medical records
Defendant's Exhibit 2 discovery responses
Defendant's Exhibit 3 Form 19
6. The issues before the Commission are whether plaintiff sustained an injury by accident in the course and scope of her employment with defendants on August 29, 2001; and if so, what, if any, benefits are plaintiff entitled to receive under the North Carolina Workers' Compensation Act; is plaintiff entitled to recover under N.C. Gen. Stat. §§ 97-90(e), 97-12, or 97-88.2?
 ***********
Based upon all of the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born June 8, 1951, and she was 51 years old at the time of the hearing before Deputy Commissioner Glenn.
2. Plaintiff was employed by defendants, a seller and installer of heating and air conditioning units in April 2000 as their office manager. Her duties were varied, including accounts receivable, scheduling of installations, customer service and running errands for her supervisor, Kelly Morton. Kelly Morton was the owner and president of the company.
3. On or about April 10, 2001, plaintiff tripped over Mr. Morton's dog, a black labrador, that he brought to the office.
4. As a result of tripping over the dog, plaintiff experienced pain in her left knee. She obtained medical treatment from Dr. Sam Oweida, an orthopedist with Oweida Orthopedic Associates in Charlotte.
5. Plaintiff was scheduled to return to Dr. Oweida in June of 2001, but did not because her knee was much better and she was not having problems.
6. On or about August 29, 2001, plaintiff again fell over Mr. Morton's dog, which was lying across the doorway of Mr. Morton's office. This occurred when plaintiff turned to leave the office after reviewing the day's errands with Mr. Morton.
7. Plaintiff was unable to obtain an appointment to see Dr. Oweida or any other physician in his clinic until September 17, 2001.
8. Plaintiff was treated by Dr. Oweida on September 17, 2001. His medical note for that visit indicates that plaintiff was seen for a new injury that occurred when she tripped over a dog at work.
9. Dr. Oweida injected plaintiff's left knee and noted that he had previously injected the knee for some acute pain that she had developed, but her prior pain had completely resolved and she was asymptomatic until this episode occurred with the dog in August 2001.
10. Plaintiff advised defendants through Mr. Morton that she had fallen over his dog on August 29, 2001, and she asked him if he was going to file a worker's compensation claim for her. He did not.
11. After asking Morton four times if he was going to complete an accident report and Morton not saying or doing anything to cause a report of the accident to be reported, plaintiff called the insurance agency that issued the coverage on behalf of defendants, Cincinnati Insurance, and asked what steps she should take to report the claim.
12. After plaintiff's inquiry, a Form 19 was faxed to her. Plaintiff completed and returned the Form 19. The form was received by Cincinnati Insurance adjuster Dan Mays on or about October 5, 2001.
13. Mr. Mays then forwarded the claim to Teresa McAllister, who was also an adjuster for the defendants.
14. After Ms. McAllister received the claim and conducted her investigation, she accepted the claim as "medical only."
15. When plaintiff's physician later advised Ms. McAllister that arthroscopic surgery would be needed, Ms. McAllister authorized the surgery and related expenses. The surgery was performed on December 27, 2001 by Dr. Oweida at Mercy Hospital South in Charlotte, North Carolina.
16. Ms. McAllister accepted the claim as compensable, advised plaintiff that the claim was accepted and that she would be provided necessary benefits including weekly compensation. Because plaintiff would be out of work for a sufficient period, Ms. McAllister informed plaintiff that she would waive the seven-day waiting period and initiate compensation checks.
17. After plaintiff's surgery, when the compensation checks did not come as Ms. McAllister had promised, plaintiff contacted her to find out what had happened. Ms. McAllister told plaintiff that she now had a question about a preexisting condition of the left knee.
18. When questioned at the hearing by the Deputy Commissioner as to what preexisting condition she had a question about, Ms. McAllister indicated that she believed plaintiff to be suffering from a preexisting condition as noted in the medical record of Dr. Oweida dated April 30, 2001.
19. When the Deputy Commissioner directed Ms. McAllister to Dr. Oweida's note of September 17, 2001, in which the doctor indicated that the prior condition for which he had treated plaintiff's knee "had completely resolved" and was asymptomatic until this episode occurred with the employer's dog, Ms. McAllister stated that she refused to accept the opinion of the treating physician that plaintiff's preexisting condition had resolved prior to August 29, 2001.
20. Ms. McAllister testified that she had no other evidence to contradict or cast doubt upon the treating physician's opinion that plaintiff's preexisting condition had resolved before August 29, 2001, nor does she have any medical training that would enable her to reject the doctor's opinion. Ms. McAllister testified that she had not talked to Dr. Oweida or any other doctor to ascertain whether Dr. Oweida's opinion was correct or not.
21. Despite this lack of contrary evidence, Ms. McAllister further testified that she thereafter denied the claim because she refused to accept the medical opinion of Dr. Oweida.
22. Ms. McAllister's failure to deny the claim after her interview with Mr. Morton, along with her statements to plaintiff regarding potential reinstatement of the claim after the denial was issued, indicate that the denial of the claim was not based in any way upon the statement to the adjuster by Mr. Morton.
23. Defendants presented no evidence that they have sought or obtained any physician opinion regarding the accuracy or inaccuracy of Dr. Oweida's opinion as set forth in his note of September 17, 2001.
24. Defendants did not deny this claim until January 14, 2002.
25. Ms. McAllister admitted that, at the latest, and in the light most favorable to defendants, defendants had notice of this claim on or about October 5, 2001 when plaintiff forwarded the Form 19 to Mr. Mays. That time of notice does not take into account that plaintiff told Mr. Morton prior to that time that she fell over his dog and that she was having left knee symptoms on August 29, 2001.
26. Ms. McAllister accepted this claim when she advised plaintiff that the claim was accepted, upon which time plaintiff did rely to her detriment, and by advising the doctor and hospital that the claim was accepted, upon which information the medical providers also relied to their detriment.
27. The claim was defended without just basis and with unfounded and stubborn litigiousness.
28. The parties acknowledged that plaintiff's medical expenses have been paid by either plaintiff or third party medical providers.
29. Plaintiff has been out of work as a result of her surgery from December 27, 2001 and continuing through the date of the hearing before the Deputy Commissioner. Plaintiff has not been released to return to work.
30. Plaintiff's average weekly wage was $550.00 per week at the time of her injury by accident, yielding a compensation rate of $366.69 per week.
31. The Full Commission finds the greater weight of the credible evidence indicates Ms. McAllister's testimony is not credible.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident to her left knee occurring in the course and scope of her employment on or about August 29, 2001. N.C. Gen. Stat. § 97-2(6).
2. Defendants' denial of this claim was not within ninety days of defendants' actual notice as required by N.C. Gen. Stat. §97-18(d). Defendants have therefore waived any rights to contest compensability and liability of this claim.
3. Due to the unfounded and stubborn litigiousness of defendants, plaintiff is entitled to have her reasonable costs paid, including attorney fees of one-quarter (25%) of all medical charges paid by defendants for treatment for the right hip, to be paid in addition to payment of those charges to medical providers but not to reduce in any way charges paid to medical providers, as a cost of the proceeding. N.C. Gen. Stat. § 97-88.1; Sparks v. Mountain Breeze Restaurant FishHouse, Inc., 55 N.C. App. 663, 286 S.E.2d 575 (1982).
4. Defendants are responsible for providing all reasonably necessary medical care for plaintiff's compensable injury. This includes the medical expenses that plaintiff has already incurred which may or may not have been paid by a third party medical carrier. N.C. Gen. Stat. §§ 97-2, 97-25.
5. Due to the unfounded and stubborn litigiousness of defendants, plaintiff is entitled to have her reasonable attorney fees of 25% of compensation paid for by defendants as a cost of the proceeding. N.C. Gen. Stat. § 97-88.1.
6. Defendants shall pay plaintiff 8% interest on medical treatment and temporary total disability as indemnity. N.C. Gen. Stat. § 97-86.2.
7. The medical care expenses of this claim have been paid by third party medical providers who may have a right of reimbursement. N.C. Gen. Stat. § 97-90.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation of $366.69 per week from December 27, 2001 and continuing until plaintiff has returned to work at the same or greater wages as she earned at the time of her compensable injury by accident or further order of the Industrial Commission. This award is subject to the attorney's fees hereinafter approved. Such amount of the benefits as have accrued shall be paid in a lump sum.
2. Defendants shall pay all reasonably necessary medical expenses incurred or to be incurred by plaintiff for her compensable injury.
3. Defendants shall pay a reasonable attorney fee of 25% of all indemnity and medical compensation paid pursuant to this Opinion and Award, such fees shall not be deducted from amounts paid to plaintiff, but shall be paid as a part of the cost of this action.
4. Defendants shall pay plaintiff 8 % interest on medical and indemnity expenses. This amount shall not be subject to an attorney fee.
5. A copy of this Opinion and Award shall be mailed to Blue Cross Blue Shield. If any other medical providers have paid benefits on plaintiff's behalf for medical treatment resulting from this compensable injury, plaintiff shall mail that provider a copy of this Opinion and Award. Defendants shall pay plaintiff 8% of all medical costs which have accrued which resulted from her compensable injury in addition to all other compensation awarded.
6. Defendants shall pay the costs of this action.
7. A copy of this Opinion and Award shall be provided to the Fraud division of the Industrial Commission for investigation.
This the ___ day of November 2003.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER
LKM/mb